WOOLDRIDGE (THOMAS v.). See Case No. 13,918.

=====

## Case No. 18,026.

### WOOLEN et al. v. NEW YORK & ERIE BANK.

[12 Blatchf. 359.] [1]

Circuit Court, N. D. New York. Oct. 13, 1874.

LIABILITIES OF BANK—COLLECTION OF DRAFT—DELIVERY OF BILLS OF LADING.

1. W., a banker at Indianapolis, sent to a bank at Buffalo a draft drawn on B., who re-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

sided in Buffalo, and bills of lading for some lumber, in a letter stating that he inclosed, for collection and remittance of proceeds, the draft and the bills of lading. The draft was drawn by C. on B., and was payable 15 days after date, and was endorsed by M., and then, by special endorsement by W., to the cashier of the bank, "for collection." By the terms of the draft, the drawer, endorsers and acceptor waived presentment for payment and notice of protest and non-payment. The bills of lading set forth C. as the shipper of the lumber, and were dated at times two or three days prior to the date of the draft, and were endorsed by C., by M., and by W. The draft was accepted by B., and the bank delivered the bills of lading to him. B. failed before the maturity of the draft. The lumber had been sold by C. to B., and the draft was for the purchase price, and was discounted by W. for C. on the security of the bills of lading, as collateral. By ordinary course, the lumber would reach Buffalo eight days before the maturity of the draft. W. brought suit against the bank to recover the amount of the draft, on the ground that the defendant violated its duty by delivering the bills of lading before the collection of the draft. Held, that the bank was not liable.

2. The drawee was entitled to the bills of lading, on accepting the draft, as the draft was drawn on time.

[Cited in Walters v. Western & A. R. Co., 63 Fed. 392.]

[This was an action by William W. Woolen and Willis S. Webb against the New York & Erie Bank to recover the amount of a draft.]

William H. Gurney, for plaintiffs.
Edward R. Bacon, for defendant.

WALLACE, District Judge. This action was tried before the court, without a jury. The plaintiffs, bankers at Indianapolis, Indiana, sent to the defendant, a bank at Buffalo, New York, on the 28th of October, 1872, a letter, stating that they enclose, for collection and remittance of proceeds, a draft upon one Bugbee, and bills of lading for eight car loads of lumber. The draft enclosed is dated October 26th, 1872, is drawn by Coder & Co. upon Bugbee, is payable fifteen days from date, and is endorsed by one Mayhew, and then, by special endorsement, by the plaintiffs, to the defendant's cashier, "for collection." By the terms of the draft, the drawers, endorsers, and acceptor severally waive presentment for payment and notice of protest and non-payment. The bills of lading respectively set forth, that Coder & Co., at times two or three days prior to the date of the draft, have shipped, at places therein specified, certain car loads of lumber, to be delivered to them at Albany, New York, and are severally endorsed upon the back by Coder & Co., by Mayhew, and by the plaintiffs. No business dealings had ever taken place between the plaintiffs and the defendant prior to this transaction, except a few days previously, when the plaintiffs had sent to the defendant a similar draft, drawn by and upon the same parties, with similar bills of lading and endorsements, with instructions, by letter, to "de-

liver the shipping bills on acceptance of the draft." Bugbee, the drawee, resided at Buffalo. Upon receiving the draft first mentioned, the defendant presented it for acceptance to Bugbee, he accepted it, and thereupon, at his request, the defendant delivered to him the bills of lading. Bugbee failed before the maturity of the draft. It is admitted, that the lumber mentioned in the bills of lading had been purchased by Bugbee, of Coder & Co.; and that the draft was drawn for the purchase price of the lumber, and was discounted by the plaintiffs for Coder & Co., on the security of the bills of lading, as collateral. It is also admitted, that, by the ordinary course of transportation, the lumber was due at its destination eight days prior to the maturity of the draft. The plaintiffs insist that the defendant violated its duty by delivering the bills of lading before the collection of the draft, and bring this action to recover of the defendant the amount of the draft.

Bills of exchange are negotiated upon the security of bills of lading appended to them, so frequently, and the rights and obligations of parties thereto constitute such an important subject of consideration in commercial communities, that it seems remarkable that the questions involved in this case have not been settled by numerous adjudications. Such, however, does not seem to be the fact, and the case must be determined as res nova. By receiving a draft for collection, the band receiving becomes the agent of the owner, and, in the discharge of its obligations as such, is bound to present the same for acceptance without unreasonable delay, and to present the same for payment at its maturity; and, if not accepted, or not paid when presented, it must take such steps, by protest and notice, as are necessary to charge the drawer and endorser. While, ordinarily, it is not necessary to present a draft for acceptance, presentment and demand of payment at maturity, with due notice and protest, if not paid, being sufficient to hold the drawer and endorser, this rule does not obtain as to a collecting agent, but prompt presentment for acceptance is required, so that, in case of non-acceptance, the owner can resort immediately, and before maturity, to the drawer. Allen v. Suydam, 17 Wend. 368, 20 Wend. 321. Upon failure to discharge this duty, the receiving bank becomes liable as for negligence, for any damages resulting from the default.

In the present case, the defendant was absolved from the duty of presenting for payment, and of protesting and giving notice of non-payment of the draft, these steps having been waived by the express terms of the draft, to which waiver the plaintiffs, as endorsers, were parties.

The rights and obligations of the parties, if the draft alone had been forwarded, having been ascertained, it remains to consider how far they are changed by the instructions

contained in the letter, and those implied from the transmission of the bills of lading in conjunction with the draft. As between the parties here. the facts, that the lumber had been sold by Coder & Co. to Bugbee, that the draft they had drawn on Bugbee was for the purchase price of the lumber, and that the plaintiffs had discounted it for Coder & Co., upon the bills of lading as collateral security, are not material, except so far as notice of these facts was furnished to the defendant by the letter and its contents, because, except from this source, the defendant had no knowledge of them.

The instruction in the letter, to collect the draft and remit its proceeds, is not controlling. Had the draft alone been enclosed with such instructions, the duty of collecting it would not have devolved on defendant. Its duty would only have been to present it for acceptance, and, if acceptance was refused to protest and give due notice, and, if paid, to remit its proceeds. If its duty in the premises had not been restricted by the terms of the draft, it would not have been obligatory upon the bank to enforce collection by legal proceedings, but only so to rulfil its trust as to enable the owner of the draft to enforce promptly and completely his cause of action against the drawer and endorser. And if, instead of delivering them to Bugbee, it had retained the bills of lading until default in payment of the draft, its whole duty in regard to them would have been discharged by returning them to the plaintiffs. That some duty in reference to the bills of lading was imposed on the defendant, which would not have been required had the draft alone been sent, is evident; otherwise, their transmission is deprived of all significance; but, whether that duty was to retain them until payment of the draft, or only until it was accepted by Bugbee, cannot be determined from the language of the letter. The direction to collect is, in legal effect, not one to enforce collection, but to return the bills of lading to the plaintiffs; and upon what contingency is not specified. Resort must, therefore, be had to the instruments enclosed in the letter, to ascertain the rights of the parties and the duty of the defendant in regard to them. These instruments are to be read and construed together.

The draft is drawn by a person who has consigned lumber to himself at Albany, and transferred his title to it by endorsing the bills of lading to another. who has likewise endorsed the draft and bills of lading to the plaintiffs, who have endorsed both instruments to the defendant. The drawee resides at the city where the defendant transacts its business, and the lumber, by ordinary course of transportation, will reach a distant market several days before the draft matures. It is evident that the draft originated from the shipment of the lumber, was negotiated on the credit of that shipment, and that the parties to it intended that the defendant should deliver the bills of lading to the drawee upon his compliance with the conditions of the agreement under which the lumber was shipped. What those conditions were must be determined by the draft and bills of lading only, and must resolve themselves into one of two alternatives. Either the drawer had consigned the lumber on his own account, to be sold for him by the drawee, and drawn upon the latter for an advancement on the consignment, or the drawer had sold the lumber to the drawee, and drawn upon him for the purchase price. On the first supposition, the drawee was under no obligation to accept the draft until he received the property consigned; on the second, the fact, that the draft was payable fifteen days after date, indicated that the sale was on a credit of that time. If the sale was on credit, the drawee was entitled to a delivery of the property, and to require him to pay for it on delivery would be to repudiate the agreement for credit. Upon either hypothesis, the drawee was entitled to the property as the consideration of his acceptance of the draft. If such was his right, evidently, the drawer, endorser, and owners of the draft had no interest in the bills of lading, except so far as they were security for the acceptance of the draft; and it was reasonable to infer that they were forwarded to the defendant to retain or return, in case acceptance was refused.

To sustain a recovery here, it must be held, that the facts implied that the plaintiffs were the owners of the lumber, and proposed to transfer it to Bugbee on payment of the draft, and had constituted the defendant their agent to consummate this transfer. If the draft had been payable at sight, this theory would seem reasonable. But, the circumstance, that the draft was on time, is a very material one. It is difficult to appreciate why time was to be given to the drawee, unless to enable him to realize funds for its payment from the property on account of which it was drawn. If it had been payable at sight, there would be no room for the inference that the lumber was sold on credit, or that the drawee was entitled to the property in order to realize from it. If the draft had been payable ninety days after date, surely it would not be reasonable to infer, that, for nearly half length of time, the property was to remain at its destination, with charges for storage or demurrage accumulating upon it, and the legal title to it controlled by a corporation in a distant city, which, awaiting the payment of the draft, was under no duty to protect, and possessed no right to dispose of, the property. The cogent inference would be, that the drawee was to have possession upon acceptance, for the purpose of using the property and meeting his acceptance. If such would be the legal presumption had the draft been payable in ninety days, would the presumption change if it had been payable in sixty

days, in thirty days, or in a shorter time? If so, where is the line of distinction to be found? Unless it can be ascertained, by some test capable of certain and general application, any such distinction must be rejected. Such a test is found, if the distinction depends upon the consideration whether the draft is on time or at sight; and the only reasonable and certain rule must be held to be, that, if the draft is on time, acceptance by the drawee is conditioned upon a transfer of the property against which it is drawn.

My conclusion, therefore, is, that the defendant had a right to assume that the duty confided to it was to procure acceptance of the draft, and, upon acceptance, to deliver the bills of lading to the drawee, or, if acceptance was refused, to protest and give notice thereof to the plaintiffs, retaining the bills of lading until the maturity of the draft, unless instructed before then to return them. This conclusion is sustained by the case of Lanfear v. Blossman, 1 La. Ann. 148. It is there held, that, where the holder of a bill of exchange which had been negotiated with a shipping bill appended to it, payable at a specified time after date, refused to deliver the bill of lading to the drawee on his accepting the draft, and, for that reason, the drawee refused to accept, a protest was made without reason, and the drawer of the draft was discharged. This is the only reported case which I have been able to find, except one at nisi prius, in the first circuit, where a verdict was ordered for the plaintiffs, upon facts similar to those here. The opinion in Lanfear v. Blossman is an elaborate and very able one, and is entitled to greater weight, as an authority, than a decision upon first impression at circuit. I, therefore, hold, that the defendant was guilty of no negligence in delivering the bills of lading to Bugbee, and order judgment for the defendant.