# THE SUMITOMO BANK OF HAWAII, LIMITED, v. HAWAII NOSAN SHOKWAI, LIMITED; G. FLOYD PERKINS, TRUSTEE HAWAII NOSAN SHOKWAI, LIMITED, A BANKRUPT, INTERVENOR.

## No. 1354.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED MAY 19, 29, AUGUST 3, 1922.          DECIDED AUGUST 5, 1922.

PETERS, C. J., EDINGS AND PERRY, JJ.

BILLS AND NOTES—*indorsement—when restrictive.*

   Where A, the payee of a bill of exchange, transfers the bill to B for collection and indorses the instrument "Pay to the order of B for A," the indorsement is a restrictive one.

SAME—*restrictive indorsement—effect of rights of.*

   A restrictive indorsement of a draft confers upon the indorsee the right to receive payment of the instrument and to bring any action thereon that the indorser could bring; but where the indorsee is the agent of the indorser and holds the instrument without consideration merely for collection for the indorser he is not vested with title to the instrument nor can he sue the indorser thereon upon dishonor thereof by the acceptor.

SAME—*time drafts against bill of lading.*

   Where a time draft is drawn against bill of lading attached the drawee is entitled to receive and have delivered to him the attached bill of lading upon acceptance of the draft.

CHATTEL MORTGAGE—*advances.*

   To constitute "advances," as that word is employed in a chattel mortgage given as security for such as were or might be made by the mortgagee to the mortgagor, it should appear that the mortgagee furnished to the mortgagor money or its equivalent upon a contract between the parties, express or implied.

SAME—*same.*

   Where an indorsee for collection of a foreign bill of exchange under a restrictive indorsement of the payee omits, at the request

of the acceptor, to protest the draft upon dishonor the unliqui-
dated liability of the indorsee to his indorser for such omission,
if any, does not constitute an "advance" under a chattel mortgage
given to the indorsee to secure advances made or to be made by
the indorsee to the acceptor, nor are these by reason thereof
moneys "owing" from the acceptor to the indorsee.

APPEAL AND ERROR—*law of the case.*

The supreme court of Hawaii not being the court of last resort
in causes in which the amount involved, exclusive of costs,
exceeds $5000, a decision by it on a former appeal of such a
cause is not binding as "the law of the case," that doctrine at
best applying only to courts of last resort.

OPINION OF THE COURT BY PETERS, C. J.

This is a suit in equity by the Sumitomo Bank of Ha-
waii, Limited, an Hawaiian corporation, as mortgagee, to
foreclose a chattel mortgage given to it by the Hawaii
Nosan Shokwai, Limited, as mortgagor. The debt de-
scribed in the conditions of the mortgage is "all such sums
of money, whether evidenced by promissory notes or by
open account, not exceeding in all the sum of Ten Thou-
sand Dollars ($10,000.00) as the Mortgagee may have ad-
vanced or shall hereafter advance to the said Mortgagor,
within one year from the date hereof on the security of
this mortgage or any subsequent extension thereof, or
which may become owing by the Mortgagor to the Mort-
gagee * * *." The mortgage is dated December 20, 1919.

The mortgagor denied that the mortgagee, either prior
to the execution of the mortgage or since, had made any
advances to it or on its behalf, or that there were any
sums of money owing from it to the mortgagee at the time
suit was filed.

The mortgagee claimed upon the trial that it had ad-
vanced to or on behalf of the mortgagee in all the sum of
$10,611.19, and in support of its claim offered, and there
were admitted in evidence, seventeen foreign bills of ex-
change drawn upon the mortgagor and accepted by it but

dishonored when due, and which the mortgagee claimed it, as holder for collection by indorsement of the payee, had, at the request of the mortgagor, failed to protest. The drawers were exporters in Japan and the drafts were for goods sold by them to the mortgagor and were drawn against documents attached, including bills of lading for the goods. The Sumitomo Bank, Limited, of Hiroshima, Japan, was the payee of all of the drafts and had discounted them for the drawers. The bill of lading in each case was delivered to the mortgagee upon acceptance of the draft to which it was attached.

The trial court held that the drafts did not constitute advances by the mortgagee to the mortgagor and that there were not any sums of money owing by the mortgagor to the mortgagee at the time the suit was filed and dismissed the bill. On appeal this court held that the drafts having been drawn against bills of lading attached for goods consigned by the drawers to the drawee, and the bills of lading delivered to the drawee, the drafts constituted advances. (See 25 Haw. 646.)

Pending appeal the mortgagor was adjudicated a bankrupt and the trustee in bankruptcy, upon leave thereto first had and obtained, intervened on its behalf.

Upon remand to the trial court, further proceedings were had consistent with the opinion of this court resulting in a decree finding that the mortgagor upon the date of the institution of the foreclosure proceedings was indebted to the mortgagee in the sum of $10,000 and ordering a foreclosure of said mortgage to satisfy such indebtedness together with interest, expenses and costs.

For reasons that will become obvious as the opinion progresses the respective dates of the drafts, the dates of their acceptance, their due dates, amounts and exhibit numbers are set forth as follows:

| Plaintiff's Exhibit No. | Date of Draft | Date of Acceptance | Due date | Amount |
|---|---|---|---|---|
| 3 | Aug. 21, 1919 | Sept. 3, 1919 | Nov. 2, 1919 | $  105.09 |
| 4 | Aug. 13, 1919 | Aug. 26, 1919 | Oct. 25, 1919 | 978.86 |
| 5 | Aug. 15, 1919 | Aug. 25, 1919 | Oct. 25, 1919 | 862.03 |
| 6 | Oct.  1, 1919 | Oct. 15, 1919 | Dec. 4, 1919 | 1,194.76 |
| 7 | Oct.  2, 1919 | Oct. 15, 1919 | Dec. 14, 1919 | 882.46 |
| 8 | Oct.  2, 1919 | Oct. 15, 1919 | Jan. 13, 1920 | 356.77 |
| 9 | Oct. 11, 1919 | Oct. 23, 1919 | Dec. 22, 1919 | 1,172.13 |
| 10 | Oct. 21, 1919 | Nov. .., 1919 | Jan. 4, 1920 | 1,664.55 |
| 11 | Oct. 16, 1919 | Oct. 30, 1919 | Jan. 28, 1920 | 550.42 |
| 12 | Oct. 16, 1919 | Oct. 30, 1919 | Dec. 20, 1919 | 222.90 |
| 13 | Nov. 7, 1919 | Nov. 17, 1919 | Feb. 15, 1920 | 337.06 |
| 14 | Nov. 22, 1919 | Dec. 6, 1919 | Feb. 4, 1920 | 223.69 |
| 15 | Nov. 23, 1919 | Dec. 6, 1919 | Feb. 4, 1920 | 470.79 |
| 16 | Aug. 25, 1919 | Sept. 3, 1919 | Nov. 2, 1920 | 460.39 |
| 17 | Nov. 7, 1919 | Nov. 17, 1919 | Jan. 16, 1920 | 237.71 |
| 18 | Nov. 22, 1919 | Dec. 6, 1919 | Feb. .., 1920 | 355.62 |
| 19 | Dec. 10, 1919 | Dec. 22, 1919 | Feb. 20, 1920 | 535.96 |

$10,611.19

All of the drafts bore the indorsement of the payee and, with the exception of petitioner's exhibit 11, were in the following form: "Pay to the order of the Sumitomo Bank of Hawaii for the Sumitomo Bank, Ltd." and signed by the manager of the Sumitomo Bank, Limited. Some included the word "Ltd." after the name "Sumitomo Bank of Hawaii." The indorsement on petitioner's exhibit 11 was similar except that the words "Pay to the order of the Sumitomo Bank of Hawaii" were omitted, rendering the indorsement simply "For the Sumitomo Bank, Limited." Further, none of the drafts was at sight. All were on time, payable sixty days after sight, except petitioner's exhibits 8, 11 and 13, which were payable ninety days after sight. Exhibits 3, 6, 9, 10 and 15 bore instructions, plainly stamped on their face: "Documents against acceptance."

To hold that these drafts "at the time the mortgage was executed," amounting "in all to the sum of $10,611.19" were "past due" and "indorsed * * * in blank;" that "the

bills of lading represented the merchandise and that the consignee's obligation for the merchandise was to the legal holder of the drafts" (meaning the Sumitomo Bank of Hawaii, Limited) ; that "the local bank by failing to duly protest the drafts for nonpayment rendered itself liable to the bank in Japan;" that "the bank here delivered the goods to the consignee and thus accepted its credit for the price thereof and of course holds a valid and enforceable claim against the consignee for the purchase price of the goods as represented by the draft;" that "the Sumitomo Bank of Hawaii, holding as it did drafts duly indorsed to it in blank and accepted by the drawee, could have maintained an action thereon in its own name;" and "if it could have done so then the relation of debtor and creditor must necessarily have existed between the parties to this suit at the date of the execution of the mortgage," and finally that "if the appellant had an enforceable claim against the appellee its right to take security to protect that obligation in the form of the mortgage now in suit cannot be questioned" is to disregard both the facts of the case and the plain provisions of our negotiable instrument act.

Not all of the drafts were due at the time of the execution of the mortgage.   On the contrary only five were due aggregating $4246.10.   Moreover, the uncontradicted evidence in the case is that these drafts were sent to the Sumitomo Bank of Hawaii, Limited, for collection. Whatever the indorsements on the drafts the instructions of the indorser to the local bank, as between them, were controlling and the latter had no greater property in the drafts than such instructions implied.   But the indorsements were restrictive.   They certainly were not in blank.

Section 3484, R. L. 1915, provides: "An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer and may be negotiated by delivery."

"An indorsement in blank, which is the simplest and most common form of indorsement, is one which does not mention the person in whose favor it is made, and consists generally simply of the name of the indorser written on the back of the instrument." 8 C. J., title Bills and Notes, Sec. 536, p. 357.

Section 3486, R. L. 1915, provides: "An indorsement is restrictive, which either,

1. Prohibits the further negotiation of the instrument; or
2. Constitutes the indorsee the agent of the indorser; or
3. Vests the title in the indorsee in trust for or to the use of some other person.

"But the mere absence of words implying power to negotiate does not make an indorsement restrictive."

"An indorsement using the words 'for collection,' or words of similar import, is restrictive, and merely makes the indorsee agent for the indorser to collect the paper, but does not vest in him the legal title to the paper, nor authorize him to sell or to indorse the paper to another, although it is held that such an indorsement transfers a sufficient title to support an action by the indorsee." 8 C. J., title Bills and Notes, Sec. 547, p. 366.

Where the payee of a bill of exchange transfers the bill to another for collection and indorses the instrument to the order of the transferee for the indorser the indorsement is a restrictive one. The following cases are illustrative:

*Snee* v. *Prescott,* 1 Atk. 245, 26 Eng. Repr. 157, 159:

"Promissory notes and bills of exchange are frequently indorsed in this manner, *Pray pay the money to my use,* in order to prevent their being filled up with such an indorsement as passes the interest."

*Edie* v. *East India Co.,* 2 Burr. 1217, 97 Eng. Repr. 797, 803:

"To be sure, he may give a mere naked authority to a person 'to receive it for him:' he may write upon it—'Pray pay the money to my servant for my use;' or use such expressions as necessarily import that he does not mean to

indorse it over, but is only authorizing a particular person to receive it for him and for his own use."

*Treuttel* v. *Barandon,* 8 Taunt. 99, 129 Eng. Repr. 320:

Trover for the recovery of bills of exchange indorsed to an agent of the plaintiffs or order for their account and deposited with the defendants by such agent as a security for past and future advances by the defendants to him. The court held:

"I am of the opinion, that the defendants had sufficient notice, that these bills were not his (the agent's) property; and I therefore, think, that the plaintiffs are entitled to recover."

*Claflin* v. *Wilson,* 51 Ia. 15, 16:

"The evidence establishes the following facts:  Plaintiff sent the note through a bank to another banking house for collection.  It was indorsed by plaintiff in blank, and by the bank to whom he delivered it to the bank receiving it 'for collection.'  Neither of these banks were authorized to transfer the note; their power was limited to its collection."

*United States Nat. Bank* v. *Geer,* 41 L. R. A. (Neb.) 439, 445, 73 N. W. 266:

Here the note is indorsed to the order of another for its own account.  The court quotes with approval the following language:

"That this is a restrictive indorsement and that it operated to transfer the draft to the plaintiff only as agent for purposes of collection, cannot be doubted.  * * *  The indorsee is rather an agent of the indorser with power of substitution, and the bill is still in the possession of the indorser by his agent.  * * *  So that upon the face of the paper it appears affirmatively that the plaintiff is not the owner, but only an agent for collection."

*Freeman's National Bank* v. *National Tube Works Co.,* 151 Mass. 413, 417, 8 L. R. A. 42, 46:·

"They" (restrictive indorsements) "purported to be

made only for the purpose of collection on account of the owner, and they merely passed the legal title so far as to enable the indorsees to demand, receive and sue for the money to be paid. *First Nat. Bank* v. *Smith,* 132 Mass. 227."

*White* v. *National Bank,* 102 U. S. 658, 660:

This is a suit by A against B as indorser of a protested draft, the indorsement being "Pay to A or order for B." The court held:

"The language of the indorsement is without ambiguity and needs no explanation, either by parol proof or by resort to usage. The plain meaning of it is that the accepter of the draft is to pay it to the indorser. The indorsee is to receive it on account of the indorser. It does not purport to transfer the title of the paper or the ownership of the money when received. Both these remain, by the reasonable and almost necessary meaning of the language, in the indorser. It seems to us that the court below correctly construed the effect of the indorsement to be to make White the agent of the Bank for the collection of the money."

*Williams* v. *Potter,* 72 Ind. 354:

Suit on a promissory note which bore the indorsement "Payable to Bro. Jacob Heath for me." The court said:

"Counsel say that the words of this indorsement on the note 'show conclusively that Heath was the owner thereof, by such indorsement.' We hardly think that the words used in this indorsement were sufficient to transfer to Heath the title to the note, or to the money due thereon but they seem to us rather to have been a mere memorandum, indorsed on the note by the payee thereof, to authorize the parties owing the money to pay the same to Heath, not for Heath, but 'for me,' the appellee."

*Bank* of *America* v. *Waydell,* 79 N. E. (N. Y.) 857, 858:

A bill of exchange was sent to the payees with a general indorsement, accompanied by a letter which stated that the same was sent for collection and credit of the

drawee; the payees sent the same to a correspondent bank, to whom it was indebted; the correspondent claimed ownership of the draft under its indorsement and contract with the payees. Subsequently the drawee, becoming insolvent, the drawers revoked the authority to collect it.

The court said:

"The facts stated constituted the plaintiff a mere collecting agent of the Detroit bankers who had remitted the draft, and as it received the paper in the character of a collecting agent only, it obtained no better title to it, or to the proceeds thereof, than the remitting bankers had, unless it became a purchaser for value without notice of any defect of title. The real owners of the bill were Hasty & Co., who drew it upon the defendants, by whom it was accepted. As the plaintiff never parted with anything, gave no credit, relinquished no security, or assumed any burden or responsibility on the faith of the paper, it could not, in commercial language, be treated as a bona fide holder of the paper or of the money represented by it."

*People's & Drover's Bank* v. *Craig,* 63 Ohio St. 374, 52 L. R. A. 872, 873:

A note deposited with the bank for collection was erroneously paid and treated as a cash item. Subsequently the bank sought to hold the maker. The court held:

"The indorsement was a restricted one, and the bank had no authority to do more than receive the payment and it could not keep the note alive after payment for any purpose. Payment, even by a volunteer, was the death of the note. A person who volunteers to pay the note of another cannot by such payment make himself the owner of the note without the knowledge and consent of the holder thereof. He cannot act both as buyer and seller at the same time bargaining with himself. The doctrine of subrogation has no application to payments made by a mere volunteer, and the bank in this case was purely a volunteer."

*First Nat. Bk. of Chicago* v. *Reno County Bk.,* 3 Fed. 257-261:

Plaintiff as the owner of two negotiable bank checks drawn on the defendant transmitted the same to its agent with the indorsement, "Pay to the order of W. Hetherington & Co., Atchison, account the First National Bank of Chicago L. J. Gage, Cashier." The same by a similar restrictive indorsement came into the hands of the defendant. The defendant having collected the amounts of the checks applied the same upon the indebtedness to it of its immediate assignor and later made an assignment for the benefit of creditors. The court said:

"This was clearly a restrictive indorsement, the effect of which was to restrict the further negotiability of the bills, and to give notice to the defendant that the plaintiff did not thereby give title to them, or to their proceeds when collected. 1 Daniell on Negotiable Instruments, Sec. 698 and cases cited. Such an indorsement 'shows plainly that the indorser does not mean to part with the absolute property in the bill and has therefore barely authority to receive the money upon it.' Edwards on Bills and Notes, Sec. 277; *Leavitt* v. *Putman,* 3 N. Y. 494. 'In every such case, although the bill may be negotiable by the indorser, yet every subsequent holder must receive the money subject to the original designated appropriation thereof, and if he voluntarily assents to or aids in any other appropriation, it will be a wrongful conversion thereof, for which he will be responsible.' Parsons on Prom. Notes, Sec. 143 and cases cited. * * * It appears that the plaintiff charged the checks to Hetherington & Co. at the time of sending them to that firm for collection; but this seems to have been in accordance with a custom prevailing in such transactions. The paper sent to an agent for collection is charged to the agent, and credit is given when it is returned uncollected, or, in case of collection, when the proceeds are remitted. This, however, does not affect the title to the paper or its proceeds; that depends upon the question whether the paper is *sold* or not, except in the case of an assignment on its face, purporting to be an absolute sale or transfer, upon the faith

of which an innocent purchaser buys from the assignee, or advances money to him."

*Drew* v. *Jacocks,* 6 N. C. 138:

Jacocks drew on Jackson in favor of Conway and Whittle. The bill was indorsed "Sent to William Drew, Esq., to collect for Conway and F. Whittle." Action was brought by Drew as indorsee, after protest for nonacceptance. The court said:

"Indorsements, however, are of two kinds, general and restrictive, the latter precluding the person to whom it is made, and transferring the instrument over to another, so as to give him a right of action, either against the person imposing the restriction, or against any of the preceding parties. Such an indorsement may give a bare authority to the indorsee to receive the money for the indorser; as if to say, 'pay the money to such a one for my use,' or use any expressions which necessarily imply that he does not mean to transfer his interest in the bill or note, but merely to give a power to receive the money. This is the case before us. It is evident, from the indorsement, that William Drew paid no valuable consideration for the note and therefore could not sue the indorsees, nor indorse it to any other person who could sue either them or the preceding parties. * * * These indorsements confined the bill in the hands of the indorsee to the very purpose for which they were made, the indorser not meaning either to make himself liable or to enable the indorsee to raise money on the bill."

"Moreover the indorser is not liable on such an indorsement to the indorsee." 8 C. J., title Bills and Notes, Sec. 547, p. 367.

See also *Johnston* v. *Schnabaum,* 86 Ark. 82, 109 S. W. 1163; *Downey* v. *Nat. Ex. Bank,* 52 Ind. App. 672, 96 N. E. 403.

The Sumitomo Bank of Hawaii, Limited, paid nothing for these drafts. No consideration passed between it and its immediate indorser, the Sumitomo Bank, Limited, of Japan. That is the undisputed evidence. It held the

drafts as a mere collecting agent under a restrictive indorsement. Its rights were no greater than conferred upon it as such under the statute.

Section 3487, R. L. 1915, provides: "A restrictive indorsement confers upon the indorsee the right,

1.    To receive payment of the instrument;
2.    To bring any action thereon that the indorser could bring;
3.    To transfer his rights as such indorsee, where the form of the indorsement authorizes him to do so.

"But all subsequent indorsees acquire only the title of the first indorsee under the restrictive indorsement."

But the right of the Sumitomo Bank of Hawaii, Limited, to sue upon the drafts does not mean that it was vested with title thereto. Its rights were qualified. It was in no better position than the mere donee of a power to collect a chose and sue thereon in its own name with power of substitution. It was never vested with title to the drafts further than it was necessary to exercise its rights as an agent for collection for the benefit of its principal and enforce the rights of its principal therein and thereunder.

*Smith* v. *Bayer,* 79 Pac. (Or.) 497, 498:

"The only points of real importance on this appeal are: (1) whether the indorsement, being on its face 'for collection and return' to the payee, vested plaintiff with such a title as will enable him to maintain an action thereon in his own name. * * * The indorsement of a promissory note by a payee with the words 'for collection,' or the like, is not strictly a contract of indorsement, but rather the creation of a power, the indorsee being the mere agent of the indorser to receive and enforce payment for his use. The title to the note and the proceeds thereof remain in the payee, and he may maintain suitable actions and proceedings to enforce his right. White v. National Bank, 102 U. S. 658, 26 L. Ed. 250; Commercial Bank of Pennsylvania v. Armstrong, 148 U. S. 50, 13 Sup. Ct. 533, 37 L. Ed. 363; Sweeney v. Easter, 1 Wall. 166, 17 L. Ed. 681;

Williams, Deacon & Co. v. Jones, 77 Ala. 294; People's Bank of Lewisburg v. Jefferson County Savings Bank, 106 Ala. 524, 17 South. 728, 54 Am. St. Rep. 59; Central Railroad v. First National Bank of Lynchburg, Virginia, 73 Ga. 383.    There is, in the absence of a statute, some conflict in the decisions as to whether such an indorsee can sue in his own name.    The weight of authority seems to be in favor of his right to do so. . 4 Am. & Eng. Ency. Law (2d Ed.) 274; Freeman v. Exchange Bank, 87 Ga. 45, 13 S. E. 160; Roberts v. Parrish, 17 Or. 583, 22 Pac. 136; Falconio v. Larsen, 31 Or. 137, 48 Pac. 703; Selover, Bank Collections, Sec. 28.    And it is now so provided by statute in this state.    B. & C. Comp. Sec. 4439; Selover, Negotiable Instruments Law, Sec. 155; Crawford, Neg. Inst. Law, Sec. 67.    We are therefore of the opinion that the present action was rightfully brought in the name of the plaintiff.    It was open, however, as against him, to all defenses which could have been made if the notes had remained in the hands of the indorser, and the action had been brought by it.    Wilson v. Tolson, 79 Ga. 137, 3 S. E. 900; Leary v. Blanchard, 48 Me. 269.    The indorsement did not pass the title nor did it deprive the defendants of any defense they may otherwise have against the note.    It merely created the plaintiff the agent of the payee for collection with the right to sue in his own name."

Nor could the Sumitomo Bank of Hawaii, Limited, upon protesting the drafts, hold the antecedent parties to the transaction.    It was not a holder in due course.    The primary obligation of the acceptor remained the same, enforceable at the instance of the payee or its agent, the restricted indorsee.

It appears from the evidence that upon acceptance of the drafts by the drawee the Sumitomo Bank of Hawaii, Limited, delivered to the drawee the respective bills of lading attached thereto.    Upon these facts this court by its former opinion predicated an obligation on the part of the acceptor as consignee of the goods to pay the holder of the drafts and in terms held such delivery to be an

advance and secured by the mortgage.    This might be true were the local bank holder of the drafts in due course and the drafts payable at sight.    But the local bank was merely an agent for collection and the drafts were payable on time after sight.

Where time drafts drawn against bills of lading attached are sent to an agent for collection the agent should deliver the bills of lading to the drawee and the drawee is entitled to receive the same, upon the acceptance by him of the drafts.

*National Bank of Commerce of Boston* v. *Merchants' National Bank of Memphis,* 91 U. S. 92, 95-98:

"But it seems to be a natural inference, indeed a necessary implication, from a time draft accompanied by a bill of lading indorsed in blank, that the merchandise (which in this case was cotton) specified in the bill was sold on credit, to be paid for by the accepted draft, or that the draft is a demand for an advance on the shipment, or that the transaction is a consignment to be sold by the drawee on account of the shipper.    It is difficult to conceive of any other meaning the instruments can have.    If so, in the absence of any express arrangement to the contrary, the acceptor, if a purchaser, is clearly entitled to the possession of the goods on his accepting the bill, and thus giving the vendor a completed contract for payment. This would not be doubted, if, instead of an acceptance, he had given a promissory note for the goods, payable at the expiration of the stipulated credit.    In such a case, it is clear that the vendor could not retain possession of the subject of the sale after receiving the note for the price.    The idea of a sale on credit is that the vendee is to have the thing sold on his assumption to pay, and before actual payment.    The consideration of the sale is the note.    But an acceptor of a bill of exchange stands in the same position as the maker of a promissory note.    If he has purchased on credit, and is denied possession until he shall make payment, the transaction ceases to be what it was intended, and is converted into a cash sale.    Everybody understands that a sale on credit entitles the pur-

chaser to immediate possession of the property sold, unless there be a special agreement that it.may be retained by the vendor; and such is the well-recognized doctrine of the law.  The reason for this is, that very often, and with merchants generally, the thing purchased is needed to provide means for the deferred payment of the price. Hence it is justly inferred that the thing is intended to pass at once within the control of the purchaser.  It is admitted that a different arrangement may be stipulated for.  Even in a credit sale, it may be agreed by the parties that the vendor shall retain the subject until the expiration of the credit, as a security for the payment of the sum stipulated.  But, if so, the agreement is special, something superadded to an ordinary contract of sale on credit, the existence of which is not to be presumed. Therefore, in a case where the drawing of a time draft against a consignment raises the implication that the goods consigned have been sold on credit, the agent to whom the draft to be accepted and the bill of lading to be delivered have been intrusted cannot reasonably be required to know, without instruction, that the transaction is not what it purports to be.  He has no right to assume and act on the assumption that the vendee's term of credit must expire before he can have the goods, and that he is bound to accept the draft, thus making himself absolutely responsible for the sum named therein, and relying upon the vendor's engagement to deliver at a future time.  This would be treating a sale on credit as a mere executory contract to sell at a subsequent date. * * * That the holder of a bill of lading, who has become such by indorsement and by discounting the draft drawn against the consigned property, succeeds to the situation of the shipper, is not to be doubted.  He has the same right to demand acceptance of the accompanying bill, and no more.  If the shipper cannot require acceptance of the draft without surrendering the bill of lading, neither can the holder.  Bills of lading, though transferable by indorsement, are only *quasi* negotiable.  1 Parsons on Shipping, 192; *Blanchard* v. *Page,* 8 Gray, 297a.  The indorser does not acquire a right to change the agreement between the shipper and his vendee.  He cannot impose obligations or deny advantages

to the drawee of the bill of exchange drawn against the shipment which were not in the power of the drawer and consignor."

*Walters* v. *Western & A. R. Co.,* 63 Fed. 391, 392:

"* * * where a time draft is drawn by the consignor of goods, and attached to a bill of lading for the goods, and the draft is sent to a bank for collection at the place to which the goods are consigned, an acceptance by the drawee entitles him to have the bill of lading delivered to him; the reason given for this ruling being that the consignee is expected to sell the consigned goods in order to realize funds with which to take up the draft by the time it matures. National Bank of Commerce v. Merchants' Nat. Bank, 91 U. S. 92; Woolen v. Bank, 12 Blatchf. 359, Fed. Cas. No. 18,026; Bank v. Wright, 48 N. Y. 1; Bank v. Luttgren (Minn.) 13 N. W. 151; Erwin v. Harris, 87 Ga. 335, 13 S. E. 513."

See also Williston on Contracts, Sec. 1134.

To constitute "advances," as that word is employed in the mortgage under consideration, it must appear that the mortgagee furnished to the mortgagor money or its equivalent upon a contract express or implied. "To 'advance' money is to pay it before it is due, or it is to furnish money for a specified purpose, understood between the parties; the money or some equivalent to be returned." *Kinney* v. *Hynds,* 49 Pac. (Wyo.) 403, 404. "That it should be an advancement as contemplated by the mortgage would, of necessity, involve a contract relation, express or implied." *Provident Mutual Building and Loan Assn.* v. *Shaffer,* 83 Pac. (Cal.) 274, 275.

Obviously, as previously pointed out, the Sumitomo Bank of Hawaii, Limited, had not furnished money or its equivalent upon either the drafts or the bills of lading. It held the drafts without consideration either good or valuable. It had parted with nothing. Likewise in respect to the bills of lading, in delivering them to the

drawee upon acceptance it performed its clear legal duty in the premises, no more no less.   Upon acceptance of the respective drafts and the delivery of the bills of lading its position was not altered in any particular.   The *statu quo ante* still obtained.   No novation had occurred.   The primary obligation of the acceptor of the drafts remained the same.   It cannot be said that under these circumstances the mortgagee advanced anything whatever either to or on behalf of the mortgagor.

The mortgagee contends, however, that at the request of the mortgagor it refrained from protesting the drafts when due and hence became obligated to its indorser thereon.   This court upon the former hearing so held.   In this it was wrong. .

The only evidence of forbearance on the part of the mortgagee to protest the drafts was in respect to those due prior to the date of the mortgage.   But assuming that the evidence adduced applied to all of the drafts, and that the mortgagee failed to protest the drafts at the instance and request of the mortgagor, as indorsee for collection under a restrictive indorsement, it was not liable *per se* to its immediate indorser in the amount of the face of the drafts.   Section 3602, R. L. 1915, imposes certain penalties for failure by an indorsee to protest a foreign bill of exchange for dishonor by the acceptor.   It says: "If it is not so protested the drawer and indorsers are discharged."   But the section refers to indorsees in due course.   As previously pointed out the holder of a draft, under the circumstances of the instant case, has no rights against antecedent parties.   Undoubtedly the holder for collection is liable to his principal under his agency employment for any damages suffered by the latter by reason of the agent's failure to duly protest.   But that is a liability resulting from the contract of employment and not as a result of the application of the law merchant to

the rights of the respective parties to the draft. No evidence was offered showing that the local bank had suffered in any way as the result of its failure to protest the drafts. No claim for damages appears to have been made of it by its principal. Apprehension of liability for damages or even liability unliquidated as the result of the failure of the agent for collection to protest a draft cannot be considered "advances" or "moneys" owing from the acceptor to the delinquent holder.

It is further contended by the mortgagee that it was the intention of the parties to the mortgage that the mortgage secure these drafts and that the word "advances" was employed pursuant to that intention. The complete answer would be that if they so intended they failed to express it and the terms of the mortgage being clear and unambiguous in that regard oral evidence varying its terms would be inadmissible.

But assuming that that was the intention of the parties, the mortgage was given to, and its conditions are in favor of, the Sumitomo Bank of Hawaii, Limited. The obligations of the Hawaii Nosan Shokwai, Limited, upon the drafts are to the Sumitomo Bank, Limited, of Japan. In the absence of a showing of any consideration for the execution of the mortgage or advances made by the mortgagee to the mortgagor subsequently to its execution or any indebtedness existing from the mortgagor to the mortgagee at the time of the institution of the foreclosure proceedings the mortgagee would have no standing in a court of equity.

The case resolves itself into a very simple one. This mortgage was unquestionably obtained by the mortgagee to secure its foreign correspondent. The mortgagor was not indebted to the mortgagee at the time of its execution. It was, however, indebted to the Sumitomo Bank, Limited, of Japan on five past-due, and eleven accepted, drafts ap-

proximating $10,000. It would have been an extremely simple matter to have had the acceptor of these several drafts execute a mortgage to the Sumitomo Bank, Limited, and correctly describe the mortgage debt as such to that bank. Instead, however, the mortgagee, for convenience perhaps, or other reasons with which we are not concerned, secured the mortgage to be executed to itself personally. It undertook in no way to make any advances to the mortgagor. No covenants to that effect on its part are contained in the mortgage, but the terms of the mortgage are sufficiently broad to include any further advances which the mortgagee might actually make on behalf of the mortgagor in connection with the mortgagor's obligations as acceptor of the drafts, or which it, the mortgagee, might by operation of law be obligated to make as a party to the drafts. This clearly appears to have been the intention of the parties and the mortgage in plain and unambiguous terms expresses that intention.

The mortgagee never actually made any advances to or on behalf of the mortgagor in connection with these drafts. No obligation by it for the benefit of the mortgagor was created by operation of law by reason of its being a party to the drafts. Nor does it appear that there were any moneys owing the mortgagee by the mortgagor by reason of the drafts. Under the circumstances there was no indebtedness existing from the mortgagor to the mortgagee at the time the suit herein was filed and hence no mortgage lien to foreclose.

The effect of the foregoing is to overrule the former opinion in this case. It would also seem to disregard the rule of "the law of the case" adopted in *Wong Wong* v. *Skating Rink*, 25 Haw. 347. We deem it unnecessary to reconsider at this time the correctness of the views expressed in the latter case on this subject, being of the opinion that the rule of the law of the case at best is not

Edings, J., concurring.

applicable in cases such as this where the amount involved, exclusive of costs, exceeds $5000. In such cases this court is not the court of last resort. The United States circuit court of appeals for the ninth circuit has appellate jurisdiction to review such final decree as might be entered herein by this court. Under these circumstances and in such a case this court is one of intermediate appellate jurisdiction and the circuit court of appeals and not this court is the court of last resort. "The doctrine of the law of the case is not only restricted to appellate tribunals but also to such courts of last resort." See *Jungk* v. *Reed,* 42 Pac. (Utah) 292; *United States* v. *Elliott,* 41 Pac. (Utah) 720; *Lawrence* v. *Ballou,* 37 Cal. 518; *Klauber* v. *San Diego etc. Co.,* 98 Cal. 105, 107; *Galigher* v. *Jones,* 129 U. S. 193.

The decree appealed from is reversed and the cause remanded to the trial judge with instructions to dismiss the bill.

*W. W. Thayer* for petitioner.

*E. J. Botts* for intervenor.

### CONCURRING OPINION OF EDINGS, J.

I concur in the foregoing conclusion. Upon the former hearing of this case I believed, and still believe, that as between the parties to the mortgage the evidence was sufficient to sustain the petitioner's claim to a lien, but with the intervention of the trustee in bankruptcy the rights of the respective parties have been altered. As against the trustee in bankruptcy, the intervenor in this case, with all the rights of a creditor who has levied upon the property in good faith without notice except as appears of record, I do not think the bank's claim to a lien can be sustained. See R. L. 1915, Sec. 3120; Bankruptcy Act of July 1, 1898, Ch. 541, Sec. 47a, 30 U. S. Stat. L., 557, as amended by Act of June 25, 1910, Ch. 412, Sec.

8, 36 U. S. Stat. L., 840; *In re Cooper's Estate,* 226 Fed. 317, 322.