THE FIRST NATIONAL BANK OF HAWAII AT HONOLULU, A CORPORATION, *v.* WAIAKEA MILL COMPANY, A CORPORATION, THE PEO-PLE'S BANK, LIMITED, A CORPORATION, AND HENRY WATERHOUSE TRUST COMPANY; LIM-ITED, A CORPORATION, RECEIVER OF THE PEOPLE'S BANK, LIMITED.

## No. 1529.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. R. J. O'BRIEN, JUDGE.

ARGUED OCTOBER 28, 1924.                    DECIDED NOVEMBER 6, 1924.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE ANDRADE
IN PLACE OF PETERS, C. J., DISQUALIFIED.

BILLS AND NOTES—*transfer—restrictive indorsements.*

The indorsement "Pay to any bank or banker or order, prior indorsements guaranteed" is not a restrictive indorsement.

SAME—*same—bona fide purchaser.*

A depositor in the ordinary course of business deposited with his Hilo bank a sight draft payable to the order of the Hilo bank, received immediate credit therefor and, in pursuance of the ordinary practise of the parties, issued its checks against the amount of the deposit for more than its total. The Hilo bank indorsed the draft with an absolute indorsement and forwarded it to the plaintiff, its Honolulu correspondent, with an enclosure slip reading "We enclose for collection and credit." The plain-

Opinion of the Court.

tiff, in pursuance of the express understanding of the parties and of its practise thereunder immediately gave credit upon its books to the Hilo bank for the amount of the draft and other paper accompanying it and on the same day paid out more than the proceeds of the remittance in honoring checks of the Hilo bank. While the Hilo bank became insolvent subsequent to the deposit with it of the draft and before the receipt of the same by the plaintiff, the latter, at the time of the receipt of the draft and of the payment of the proceeds for the benefit of the Hilo bank, had no knowledge of the insolvency. *Held*, that the plaintiff was a bona fide purchaser for value and upon refusal of the payee to pay the draft, became entitled to recover the amount thereof from the maker.

SAME—*same—effect of right of bank to charge back against indorser or maker.*

When under the above mentioned circumstances a draft is transferred from a depositor to the bank or by one bank to another, the mere fact, that there is an understanding that in the event of nonpayment its amount may be charged back against the prior indorser or against the maker, as the case may be, does not in any wise vary the legal effect of the transaction as a transfer of the title.

SAME—*same—exhausting deposit account—purchaser for value.*

Ordinarily and in the absence of special circumstances the rule is to be applied that, as checks are paid, the amount is to be charged against the oldest item of deposit or credit of the customer. The first money in is deemed to be the first money out.

OPINION OF THE COURT BY PERRY, J.

This is an action of assumpsit wherein the plaintiff claims of the defendants the sum of $1500 in consequence of the refusal of the drawee to pay a sight draft.

The undisputed facts are as follows: the plaintiff is a corporation doing a banking business and the defendant, The People's Bank, Limited, was until February 20, 1922, a corporation doing a banking business. The defendant, the Waiakea Mill Company, a corporation engaged in the production of cane and the manufacture of sugar, on February 15, 1922, issued its draft bearing that date and otherwise reading as follows: "At Sight,

pay to the order of People's Bank, Ltd., the sum of One thousand five hundred 00/100 Dollars, Value Received, and charge same to account of Waiakea Mill Co., Ltd." This draft duly signed was addressed to Messrs. Theo. H. Davies & Company, Limited, a corporation, the Honolulu agent of the Waiakea Mill Company. The mill company had for some time prior to February 15, 1922, kept an account with The People's Bank, Limited, as its banker. On February 15, 1922, the mill company deposited its said draft with The People's Bank, Limited, and was immediately given credit on the books of The People's Bank, Limited, for the amount thereof, to wit, $1500. Thereupon The People's Bank, Limited, indorsed the draft with the following words: "Pay any bank or banker or order, prior endorsements guaranteed, The People's Bank, Ltd., Hilo, Hawaii," and forwarded it together with other checks and drafts to the plaintiff who was its Honolulu correspondent. The said draft with the other commercial paper accompanying it was enclosed in an envelope with a slip reading: "We enclose for collection and credit" and signed on behalf of The People's Bank, Limited. The total of the drafts and checks thus forwarded was $4083.08. The plaintiff received the draft in question on Saturday, February 18, 1922, and immediately placed to the credit of The People's Bank, Limited, the said sum of $4083.08 which, as above stated, included the sight draft of $1500. Shortly thereafter and on the same day the plaintiff paid checks and other orders of The People's Bank, Limited, amounting in all to $6921.94, being more than the total of the $4083.08 plus the balance to the credit of The People's Bank, Limited, on the books of the plaintiff at the time of receiving the $4083.08. The payments thus made on behalf of The People's Bank, Limited, were immediately charged against its account with the plaintiff. On the

same day (February 18) other paper amounting to $3312.85 was received from The People's Bank, Limited, by the plaintiff and entered to the credit of The People's Bank, Limited, after the receipt and credit of the amount of $4083.08. The People's Bank, Limited, suspended payment and closed its doors a few minutes before three o'clock on the afternoon of Friday, February 17, 1922, and a receiver of its business was appointed early on Monday, February 20, 1922. The plaintiff at the time of receiving the draft in question and other paper above referred to and at the time of making the payments above mentioned on behalf of The People's Bank, Limited, had no knowledge of the failure of the People's Bank or of the impending appointment of a receiver and had no such knowledge until Monday, February 20, 1922. On February 20 the plaintiff presented the draft to Davies & Company, the drawee, for payment and was refused payment because the Waiakea Mill Company had prior to the presentation ordered payment stopped.

There was also ample evidence to support the findings that for some time prior to the receipt of the draft in question by the plaintiff it was understood between The People's Bank, Limited, and the plaintiff that all paper forwarded with the forwarding slip reading "We enclose for collection and credit" should be treated as cash items and that The People's Bank, Limited, should be immediately given credit therefor on the books of the plaintiff and would have its checks paid at once out of such deposits and that the practise was in accordance with this agreement; that it was similarly the practise and the understanding between the mill company and the People's Bank that drafts such as the one in question, when deposited by the mill company, should be immediately placed to its credit on the books of the People's Bank with liberty to have such deposits drawn

against immediately by the mill company; and that in the particular instance under consideration the draft was immediately placed to the credit of the mill company upon the books of the People's Bank and that checks amounting to about $1700 were immediately issued by the mill company against the deposit so made and a small prior balance to its credit in the People's Bank. The findings of the trial judge are all amply supported by evidence.

It is contended by the mill company that the indorsement "Pay to any bank or banker or order, prior endorsements guaranteed" was a restrictive indorsement. With this we cannot agree. The language of the Negotiable Instruments Acts is not ambiguous in this respect. It provides that an indorsement is restrictive which either "prohibits the further negotiation of the instrument or constitutes the indorsee the agent of the indorser or vests the title in the indorsee in trust for or to the use of some other person" and adds that "the mere absence of words implying power to negotiate does not make an indorsement restrictive." R. L. 1915, Sec. 3486. There is nothing in this indorsement which either prohibits the further negotiation of the instrument or constitutes the indorsee the agent of the indorser or vests the title in the indorsee in trust for or to the use of some other person. *Interstate Trust Co.* v. *U. S. National Bank,* 185 Pac. (Colo.) 260, 261.

In this respect the case differs from that of *The Sumitomo Bank of Hawaii, Limited,* v. *Hawaii Nosan,* 26 Haw. 517, in which the indorsement was "Pay to A for B." Nor do the words "We enclose for collection and credit" alter in this instance the legal effect of the indorsement which is absolute in its nature, for they are to be read and understood in the light of the agreement entered into between the two banks and of the

practise of the plaintiff in pursuance of that agreement. The instruction as thus understood and the practise were that immediately upon the receipt of such paper it was to be treated as cash and credit was immediately to be given by the plaintiff to the People's Bank. Moreover that is what actually was done in this instance. The plaintiff actually gave credit immediately for the paper and subjected itself to the immediate payment of checks against that credit. While in the *Sumitomo Bank* case the court said, *inter alia,* "Whatever the indorsements on the drafts the instructions of the indorser to the local bank, as between them, were controlling and the latter had no greater property in the drafts than such instructions implied," it is to be noted first that all of the instructions referred to and not a part of them only are to be considered and in the second place that the language just quoted is to be considered in the light of the facts of the particular case in which it was used. In that case the sole question was whether the plaintiff had made "advances" to the defendant within the meaning of that term as used in a mortgage, that being a foreclosure proceeding, and the facts and the law were discussed merely with reference to that question. It was clear from the evidence in that case that the plaintiff bank had not parted with any property or incurred any liability in its handling of the drafts involved. None of them were sight drafts but on the contrary all of them were time drafts. In the case at bar it appears with equal clearness that the plaintiff did part with its money in payment of checks of The People's Bank, Limited, immediately on receiving the draft. While it did not send a remittance of the $1500 in coin to the People's Bank in Hilo, it did what was precisely the equivalent, to wit, it paid for and on behalf of the People's Bank the checks and other orders of the latter.

The indorsement, which was not restrictive and was absolute, accompanied by the immediate credit of the amount of the draft, and the payment out of its proceeds and other money of the checks of the People's Bank vested the title in the plaintiff, not subject to any agency or other trust. The plaintiff was a bona fide purchaser for value. *Amalgamated Sugar Co.* v. *U. S. National Bank,* 187 Fed. 746, 748 (Ninth Circuit Court of Appeals); and *Farmers' Bank* v. *Quasebarth,* 179 Pac. (Kan.) 300, 301. The mere fact that it was the understanding between the People's Bank and the plaintiff, on the one hand, and between the mill company and the People's Bank, on the other hand, that any checks or drafts which were not paid upon presentation would be charged back against the account of the drawer or indorser, as the case might be, does not in any wise alter the state of the title as it was effectuated by the indorsement, delivery, credit and payment. It "did not in the least vary the legal effect of the transaction." *Burton* v. *United States,* 196 U. S. 283, 297; *Walker & Brock* v. *Ranlett Co.,* 93 Atl. (Vt.) 1054, 1056, 1057; *West Texas Nat'l Bank* v. *Wichita Mill & Elev. Co.,* 194 S. W. (Tex.) 835, 838; and *National Bank* v. *Bossemeyer,* 162 N. W. (Neb.) 503, 505. The mill company, by drawing the draft, undertook to pay the amount thereof to the holder if upon due presentment it should not be paid. R. L. 1915, Sec. 3511. The agreement to charge back did not lessen this original legal liability but simply provided one method of satisfying that liability to the holder. *Burton* v. *United States, supra,* and other authorities last above cited.

The contention of the mill company that because at the close of business on Saturday, February 18, 1922, the People's Bank had a balance of $1191.35 to its credit upon the books of the plaintiff therefore the plaintiff

cannot be regarded as having paid for the $1500 draft
is fully met by the view, supported by the great weight
of authority, that ordinarily and in the absence of spe-
cial circumstances, "payments are applied to the oldest
debts" or, as it is sometimes expressed, "the first money
in is the first money out." *Merchants' Bank* v. *Sugar
Company,* 147 N. Y. S. 498, 501; *Fox* v. *Bank of Kansas
City,* 1 Pac. (Kan.) 789, 791, 792; *First Nat'l Bank of
Minn.* v. *McNairy,* 142 N. W. (Minn.) 139, 141; *Drilling*
v. *First Nat'l Bank,* 23 Pac. (Kan.) 94, 95; *U. S. Nat'l
Bank* v. *McNair,* 19 S. E. (N. C.) 361, 362; and *Oppen-
heimer* v. *Radke & Co.,* 129 Pac. (Cal.) 798, 799. This
rule is based upon reason and sound sense. It accords
with the ordinary practise not only of bankers but of
individuals. Payments for the benefit of others are gen-
erally made out of the earlier funds received. Often the
later funds received are not on hand when the payments
are made. Any other rule of application would lead
to confusion and complications.

Upon receipt by the People's Bank of the draft from
the mill company and the acceptance of the draft as
money and its immediate credit to the account of the
mill company, with liberty to the latter to issue checks
against the deposit, the relation between the two became
that of debtor and creditor. There was no infirmity in
the paper as issued and as passed along by the People's
Bank to the plaintiff that would militate against the
rights of the plaintiff which it is seeking to enforce in
this action. Of the suspension of payment and the re-
ceivership proceedings the plaintiff, as above stated, had
no knowledge until after it had credited the draft to
the People's Bank and had paid out for the People's
Bank the amount so received. The draft "was negotia-
ble paper and the unrestricted indorsement thereof by
the defendant" (The People's Bank, Limited) "who was

the * * * payee, indorser and real owner, warranted un-informed persons in receiving it, bona fide, as paper which the insolvent bank could rightfully dispose of." *Amalgamated Sugar Company* v. *U. S. National Bank, supra.*

The judgment below runs against the mill company only and not against the other defendants; but the mill company alone has excepted to the judgment. None of the other parties to the suit have appealed in any way. Presumably they are all satisfied. The exceptions are overruled.

*U. E. Wild* (*Smith & Wild* on the briefs) for plaintiff.

*H. Edmondson* (also on the briefs) for defendant.

